**AFFIRM; and Opinion Filed June 19, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01399-CV

**PROPATH SERVICES, LLC AND TERRY L. BARRETT, M.D., Appellants**
**V.**
**AMANDA RUSS, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-02637**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Boatright
Opinion by Justice Boatright

Propath Services, LLC and Terry L. Barrett, M.D. appeal the denial of their motion to dismiss, which asserted that appellee, Amanda Russ, failed to comply with the Medical Liability Act's expert-report requirement. The sole issue in this appeal is whether appellee's expert report sufficiently addresses the causal link between appellants' failure to meet applicable standards of care and the claimed injury. Finding no abuse of discretion by the district court, we affirm.

### BACKGROUND

Appellee is the wife of the late Stephen Russ. On January 29, 2015, Russ consulted his dermatologist, Dr. Peter Morrell, M.D., regarding a lesion on his right check. Dr. Morrell performed a biopsy and sent the sample to appellant Propath. Appellant Barrett, also a dermatologist, evaluated the biopsy and diagnosed Russ as having invasive squamous cell

carcinoma. On February 27, 2015, Dr. Morrell performed a surgical procedure on Russ's cheek to remove the cancerous lesion. Russ followed up with Dr. Morrell and was told during his May 29, 2015 appointment that he did not need to be seen again for a year.

In May 2016, Russ experienced swelling in his neck and was seen at Baptist Hospitals of Southeast Texas in Beaumont. Following a biopsy on one of his lymph nodes, Russ was diagnosed with metastatic malignant melanoma. Russ was referred to M.D. Anderson Cancer Center in Houston. Doctors at M.D. Anderson diagnosed Russ with Stage IIIc melanoma. They also reviewed Russ's biopsy from Propath and determined that, as of January 2015, he was suffering from Stage II melanoma, not squamous cell carcinoma as had been diagnosed by Dr. Barrett. Thus, Russ's melanoma progressed from Stage II to Stage IIIc in the fifteen months between his original diagnosis and his visit to M.D. Anderson.

Following his corrected diagnosis, Russ was administered chemotherapy. A "surgical modified radical neck dissection" was also planned but never occurred due to melanoma-related complications. As of August 2016, Russ's melanoma was diagnosed as Stage IV, MIC "with bone and lymph node involvement." By November of the same year, the melanoma had spread to his brain.

Russ sued Propath and Dr. Barrett in March 2017, asserting medical negligence based on Dr. Barrett's misdiagnosis.[1] Pursuant to section 74.351(a) of the Civil Practice and Remedies Code, TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017), Russ served the expert report and curriculum vitae of Andrzej T. Slominski, M.D., Ph.D. Dr. Slominski is board-certified in Dermatopathology and in Anatomic Pathology, and his CV reflects extensive experience in skin cancers including melanoma.

---

[1] Russ also named Dr. Morrell and his professional association as defendants, but the claims against these defendants were subsequently non-suited.

Russ died of end-stage metastatic melanoma on August 1, 2017. His suit continued as a wrongful death and survival action brought by appellee, individually, as the personal representative of Russ's estate, and as the next friend of their minor child. Appellants filed objections to Dr. Slominski's report and a motion to dismiss appellee's claims. They challenged Dr. Slominski's qualifications to opine regarding the element of causation, and they urged that his report did not establish a causal relationship between appellants' breach of the applicable standards of care and Russ's injury. The district court held a hearing on appellants' objections and motion to dismiss on October 20, 2017, and signed an order one month later denying the motion. This interlocutory appeal followed.

## ANALYSIS

Appellants contend that Dr. Slominski's report failed to adequately demonstrate causation, and therefore the district court erred in denying their motion to dismiss. We review a trial court's determination regarding the sufficiency of an expert report under an abuse-of-discretion standard. *Baty v. Futrell*, 543 S.W.3d 689, 693 & n.4 (Tex. 2018). We "defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Id.*

Under the Medical Liability Act (MLA),[2] an "expert report" must provide "a fair summary of the expert's opinions" regarding, among other topics, "the causal relationship" between the health care provider's breach of the applicable standards of care and the claimant's injury. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017). A court must grant a motion challenging the adequacy of an expert report only if it appears that the report "does not represent an objective good faith effort to comply with the definition of an expert report." *Id.* § 74.351(l)

---

[2] *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (West 2017).

(West 2017). To constitute a "good-faith effort," the report must provide "information sufficient to (1) 'inform the defendant of the specific conduct the plaintiff has called into question,' and (2) 'provide a basis for the trial court to conclude that the claims have merit.'" *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)).

We are limited to "the four corners of the expert report, which need not 'marshal all the plaintiff's proof' but must include the expert's opinion on each of the three main elements: standard of care, breach, and causation." *Id.* (quoting *Wright*, 79 S.W.3d at 52). Bare conclusions will not suffice, *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011), nor will an expert's simple *ipse dixit*, *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017), nor may omissions be supplied by inference, *Scoresby*, 346 S.W.3d at 556. The report must explain the basis for the expert's statements and link his conclusions to the facts. *Zamarripa*, 526 S.W.3d at 460. In other words, the report "must make a good-faith effort to explain, factually, how proximate cause is going to be proven." *Id.* A report that relies on inference, such as that the alleged breach precluded a quicker diagnosis and treatment, fails the good-faith standard. *Ortiz v. Patterson*, 378 S.W.3d 667, 674 (Tex. App.—Dallas 2012, no pet.). However, a plaintiff need not present evidence in the report as if he were actually litigating the merits of his claim. *Baylor Med. Center at Waxahachie v. Wallace*, 278 S.W.3d 552, 560, 562 (Tex. App.—Dallas 2009, no pet.). For example, the report need not rule out every possible cause of the injury claimed. *Id.* at 562.

Appellants fault Dr. Slominski's report for not explaining "what specific treatment was delayed and what the likely result of that treatment would have been." We conclude to the contrary. This Court in *Mosely v. Mundine*, 249 S.W.3d 775, 780–81 (Tex. App.—Dallas 2008, no pet.), affirmed the denial of a motion to dismiss in a case involving similar allegations. The report in *Mosely* opined that the defendant, a physician, "failed to identify" the plaintiff's "early cancer

nodule." *Id.* at 780. According to the report, (i) "[t]his failure resulted in delayed diagnosis of lung cancer", (ii) "required invasive and aggressive treatment," which included chemotherapy, surgery, and radiation, and (iii) in all medical probability significantly reduced the plaintiff's life expectancy. *Id*. at 780–81.

As compared to the report in *Mosely*, Dr. Slominski's report states that (i) appellants' misdiagnosis led to over a year's delay in the proper melanoma diagnosis and the corresponding commencement of melanoma treatment, (ii) pursuant to such treatment, Russ underwent chemotherapy, was scheduled to undergo surgery, and was referred for neuro-radiation and neurosurgery, and (iii) the delay in beginning the melanoma treatment caused Russ's melanoma to rapidly deteriorate from Stage IIa to Stage IIIc, and eventually to Stage IV. The report also notes that, as of May 2016, the melanoma had progressed too far to permit Russ to participate in an M.D. Anderson "neoadjuvant trial." In addition, the report quotes American Cancer Society statistics that, if the commencement of appropriate treatment is delayed from Stage IIa to Stage IIIc: (i) the five-year survival rate drops in half (from 81% to 40%), and (ii) the ten-year survival rate drops by more than half (from 67% to 24%). Finally, Dr. Slominski opines that, "in reasonable medical probability, Russ may die as a result of the unfortunate delay before melanoma treatment could begin." Similar to the report in *Mosely*, Dr. Slominski's report is supported by facts that causally link appellants' breach to Russ's injury, thus constituting an "objective good faith effort" to provide a "fair summary of the expert's opinions." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l), (r)(6).

In arguing to the contrary, appellants contend that Dr. Slominski's report more closely resembles the report in *Ortiz*, which stated that the plaintiff "more likely than not . . . would have survived" if he "had received appropriate evaluation and treatment." 378 S.W.3d at 673. We held that the trial court did not abuse its discretion in granting the defendants' motion to dismiss because

the plaintiff's expert report failed to articulate causation without resort to impermissible inferences. *Id.* at 675. Specifically, the report failed to explain how the patient's condition worsened from "very ill" to "death" from pneumonia and pulmonary edema in a short time as a result of the defendants' failure to conduct certain tests and to admit the patient to a hospital. *Id*. In contrast to *Ortiz*, Dr. Slominski's report states that appellants misdiagnosed Russ as having squamous cell carcinoma, which led to a delay in melanoma treatment, thereby causing Russ's melanoma to progress and halving his chance of survival. The report's statement that the proper "management and diagnostic follow-up" of Russ's cancer would have included a sentinel lymph node biopsy, as well as its reference to melanoma treatment, provide some indication of what appellants should have done differently. *See Baty*, 543 S.W.3d at 697 (expert report's express reference to alternative method for administering anesthesia during cataract surgery provided some indication of what anesthetist should have done differently). Additional detail is not required at this stage of the litigation. *Id.*[3]

Appellants further contend that appellee must show that Russ was similar to the patients from whom the report's statistical survival rates were derived, citing *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997). *Havner* involved the sufficiency of causation evidence in the context of toxic-substance exposure, *id.* at 708, not medical malpractice, *see Bustamante v. Ponte*, 529 S.W.3d 447, 460 (Tex. 2017) (noting same). At issue in *Havner* was whether the plaintiffs' expert testimony was scientifically reliable and thus constituted "some evidence" to support the judgment in plaintiffs' favor. 953 S.W.2d at 711. The

---

[3] Appellants cite this Court's recent decision in *Lynch v. Bell*, in which we held that a report was conclusory because it failed to explain how a mouth condition causes heart valve failure or how the dentists' improper care of the patient's mouth condition in fact caused his heart valves to deteriorate. No. 05-17-00942-CV, 2018 WL 1554579, at *3–7 (Tex. App.—Dallas Mar. 30, 2018, no pet.). In contrast, Dr. Slominski's report explains how a dermatologist's misdiagnosis of Russ's melanoma led to a delay in proper diagnosis and treatment, in which time the disease progressed to the point that Russ's chance of survival was cut in half. *Lynch* is therefore distinguishable from this case.

MLA does not require the same level of formality in an expert report. *Wallace*, 278 S.W.3d at 560. *Havner* therefore does not apply in the context of this case.

## CONCLUSION

The purpose of the MLA's expert-report requirement "is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby*, 346 S.W.3d at 554. Dr. Slominski's report represents an "objective good faith effort" to meet this requirement by providing a "fair summary" of his causation opinion. Accordingly, the district court did not abuse its discretion in denying appellants' motion to dismiss. We overrule appellants' sole issue and affirm the judgment of the district court.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

171399F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PROPATH SERVICES, LLC AND
TERRY L. BARRETT, M.D., Appellants

No. 05-17-01399-CV      V.

AMANDA RUSS, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-02637.
Opinion delivered by Justice Boatright.
Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee AMANDA RUSS recover her costs of this appeal from appellants PROPATH SEVICES, LLC AND TERRY L. BARRETT, M.D..

Judgment entered this 19th day of June, 2018.